IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ANDREW ARNOLD and**
**DEBORAH ARNOLD**,

       Plaintiffs,

    vs.                                                        No. 10cv346 MCA/LAM

**SCHLUMBERGER TECH.**
**CORP.,**

       Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on *Defendant's Motion to Dismiss* [Doc. 4], filed April 19, 2010. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants the motion.

**I. BACKGROUND**

The following allegations are either undisputed or taken from Plaintiffs' *Complaint for Violation of the New Mexico Minimum Wage Act*. For purposes of Defendant's motion to dismiss, the Court accepts the factual allegations as true, and asks whether they state a plausible claim for relief. See Bixler v. Foster, 596 F.3d 751, 756 (10th Cir. 2010).

Plaintiff Andrew Arnold is a former employee of Defendant Schlumberger Technology Corporation ("Schlumberger"), a Texas corporation registered to do business in New Mexico. [Doc. 1; Exh. A at 1]. Mr. Arnold worked for Schlumberger for approximately

eight years between January 2000 and May 2008.  [See Doc. 1; Exh. A at 1].  In his position, Mr. Arnold was required to work 60-hour work weeks, and often was also required to work "fluctuating" overtime, for which he was paid in accordance with federal Fair Labor Standards Act regulations ("FLSA"). [Id.; see also id.; Exh. A, att. 1].

However, in a letter dated September 28, 2009, Peter Brownell, Schlumberger's personnel manager, informed Mr. Arnold that, after evaluation, Schlumberger had decided, at least in New Mexico, to stop following the "fluctuating workweek" method of calculating overtime.[1] [Doc. 7; Exh. A, att. 1].  To that end, Schlumberger had determined that Mr. Arnold was owed $2,199.49 in back overtime (less taxes), and sent him a check in the amount due. [Id.].

On February 25, 2010, Mr. Arnold and his wife, Plaintiff Deborah Arnold, filed their *Complaint* against Schlumberger in the Twelfth Judicial District Court, Lincoln County, New Mexico, seeking recovery of what they allege are unpaid overtime wages.  The Arnolds cite

---

[1]  In his letter, Mr. Brownell explained that Schlumberger had

> evaluated the manner in which [it] calculated overtime prior to January 1, 2009.  Employees in certain job classifications were paid overtime using the fluctuating workweek method of calculating overtime pay, which is allowed by the Fair Labor Standards Act (FLSA) regulations issued by the U.S. Department of Labor.  The issue was raised in New Mexico as to whether those regulations should be followed.  After evaluating the issue, [Schlumberger] determined that for New Mexico, beginning January 1, 2009, [it] would stop using the fluctuating workweek method allowed by FLSA regulations.

[Doc. 7; Exh. A, att. 1].

2

§ 50-4-22 of the New Mexico Minimum Wage Act ("NMMWA") for the proposition that "any employee who is required to work more than forty hours in any week of seven days, must be paid one and one-half times his regular hourly rate of pay for all hours worked in excess of forty hours."   [See Doc. 1; Exh. A at 2].  Because they calculate that Mr. Arnold was underpaid $52,585.74 for his "regular" overtime, and $56,202.80 for his "fluctuating" overtime, the Arnolds now seek unpaid overtime wages in the total amount of $108,788.54 from Schlumberger. [Id.].

On April 12, 2010, Schlumberger removed the matter to this Court on the basis of diversity jurisdiction and now moves to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that the Arnolds' claims are time-barred. [See Doc. 1 at 2; Doc. 4].  According to Schlumberger, claims for overtime wages accrue "at each regular payday immediately following the work period during which the services were rendered and for which the overtime compensation is claimed[,]" [Doc. 12 at 3 (internal quotations omitted)], which in Mr. Arnold's case would have been May 15, 2008. [Id. at 4].  Because the applicable statute of limitations gave Mr. Arnold one year from the date of accrual in which to assert his claims, reasons Schlumberger, those claims are time-barred, as the Arnolds did not file their *Complaint* until February 25, 2010.   [Id. at 3-4].

By contrast, the Arnolds contend that their claims accrued "when they became aware, or had reasonable cause to believe, that they had been damaged and they [might] have a cause of action" against Schlumberger. [Doc. 7 at 3].  Plaintiffs maintain that they neither knew nor had reason to know that Mr. Arnold might have been denied an appropriate sum

for overtime hours worked until they received Peter Brownell's letter from September 2009.[2]

They therefore insist that, because they had until September 2010 to assert their claims, those

are timely, since their *Complaint* was filed on February 25, 2010. [See id.].

## II. ANALYSIS

### A.      Standard of Review: Fed.R.Civ.P. 12(b)(6)

In order to withstand a motion to dismiss made pursuant to Fed.R.Civ.P. 12(b)(6), a

complaint must contain "enough facts to state a claim to relief that is plausible on its face."

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 569 (2007).  In handing down Twombly, the

United States Supreme Court invalidated the longstanding rule that a complaint should not

be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." Conley v.

Gibson, 355 U.S. 41, 45-46 (1957).  The Court explained that "after puzzling the profession

for 50 years, this famous observation has earned its retirement."  Twombly, 550 U.S. 544,

563.  In order to survive dismissal under the new standard, a plaintiff must "nudge[ his]

claims across the line from conceivable to plausible . . . ." Id. at 570.  In other words, "the

mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of

the pleaded claims is insufficient; the complaint must give the court reason to believe that

---

[2] The letter is dated September 28, 2009. [See Doc. 7; Exh. A, attached letter (Exh. 1)]. In his affidavit, Mr. Arnold refers to "the letter from the Defendant dated September 9, 2009 and attached hereto as Exhibit '1'." [Id.; Exh. A at 2].  Presumably, there is only one letter at issue here, as only one letter has been made a part of the record.  In any event, for purposes of the motion that currently is pending before the Court, it is of no import whether the letter was dated September 9 or September 28, 2009.

4

*this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."

Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis

in original).

> The Tenth Circuit has stated that

>> "plausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (*quoting* Twombly, 550 U.S.

at 570)(internal citations omitted).

> The Supreme Court has recently expounded upon the meaning of Twombly:

>> Two working principles underlie [the] decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009)(citation omitted). The Supreme Court has

also commented that

>> [i]n keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the

> framework of a complaint, they must be supported by factual allegations.

Id. at 1950.

Further, "'[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.'" Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009) (quoting Sutton v. Utah State Sch. for Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir.1999)).  Additionally, "[i]n evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits. . . ." Smith, 561 F.3d at 1098.

Finally, "[a]lthough the statute of limitations is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss 'when the dates given in the complaint make clear that the right sued upon has been extinguished.'"   Solomon v. HSBC Mortg. Corp., 2010 WL 3069699, at *2 (10th Cir. Aug. 6, 2010) (unpublished opinion) (quoting Aldrich v. McCulloch Props., Inc., 627 F.2d 1036, 1041 n. 4 (10th Cir.1980)).  With these standards in mind, the Court now turns to the case at hand.

### B.     Accrual of Claims Under the New Mexico Minimum Wage Act

Here, the parties disagree as to when Plaintiffs' claims accrued.  The Arnolds contend that their claims accrued when they discovered the existence of a cause of action, which would have been upon receipt of Peter Brownell's letter of September 28, 2009.  Prior to that, explain Plaintiffs, they had no reason to suspect that Mr. Arnold was not being properly

compensated for overtime hours worked and, in fact, "had been advised on several occasions by [Schlumberger's] management that payment of overtime on a declining scale was legal in New Mexico." [Doc. 7 at 2]. Thus, the Arnolds urge this Court to apply what they call the "general rule" in New Mexico that "statutes of limitation begin to run when the cause of action accrues, with the accrual date usually being the date of discovery of the cause of action." [Id.].

Schlumberger asserts that because the NMMWA does not define the term "accrue," this Court should, as other federal courts have, look to the definition of that word as it is used in the FLSA. Citing a number of federal cases, Schlumberger states that "[f]ederal courts nationwide universally hold that causes of action for overtime compensation brought under the FLSA accrue at each regular payday immediately following the work period during which the services were rendered and for which the overtime compensation is claimed." [Doc. 12 at 3]. Under such a computation, says Schlumberger, Plaintiffs' claims accrued, at the latest, in mid-May of 2008, when Mr. Arnold last received overtime wages from Schlumberger. [Id. at 4]. Schlumberger posits that because Plaintiffs did not file their *Complaint* until February 2010, their claims are time-barred and should be dismissed. [Id.].

As an initial matter, it is important to note what is *not* in dispute here. The parties do not dispute that (1) Schlumberger's last payment of overtime wages to Mr. Arnold was in mid-May 2008; (2) pursuant to § 37-1-5 of the NMMWA, the Arnolds had one year from the date of accrual of their claims to file suit; (3) the Arnolds filed suit in February, 2010; (4) the NMMWA does not define the term "accrual;" and (5) there is no New Mexico case

addressing when a wage claim accrues under § 37-1-5 of the NMMWA.  [See Doc. 5 at 2;

Doc. 7 at 1 ("The factual allegations set forth in the motion to dismiss are admitted. . . .");

Doc. 12 at 2; Doc. 16 at 4].

Section 37-1-5 of the New Mexico Statutes sets forth the time in which an action for

the recovery of unpaid overtime compensation must be brought.  Under the version that the

parties agree is applicable here,[3] "[a]ll suits and actions for the recovery of unpaid overtime

compensation or damages in connection therewith, whether arising under contract or a state

or a federal law or administrative ruling, shall be brought within one (1) year after the accrual

of such a cause of action. . . ."  N.M. STAT. ANN. § 37-1-5.

In the specific context of the New Mexico Minimum Wage Act, New Mexico courts

have determined that where a particular term is left undefined, and state case law does not

supply the answer, "it is appropriate to look to decisions of federal courts determining the

meaning of [the undefined term] in the [FLSA], and to consider those federal decisions as

persuasive authority in deciding the meaning of [the undefined term] in the New Mexico

statute."  Garcia v. Am. Furniture Co., 689 P.2d 934, 937 (N.M.App. 1984).  In Garcia, for

example, the New Mexico Court of Appeals was faced with the task of interpreting the term

"employ," as that term is used in § 50-4-21 of the NMMWA.  Id.  Because "the definition

of 'employ' [under the FLSA] is almost identical[,]" to the definitions set forth in § 50-4-21,

---

[3] Section 37-1-5 was amended in June 2009 and now provides a three-year period in
which to commence an action for wage and hour violations.  See N.M. STAT. ANN. § 37-1-5
(2009 Supp.).  The parties agree that the earlier version controls in this case. [See Doc. 5 at 2-3;
Doc. 16 at 5].

the court deemed it proper to turn to the FLSA to interpret the same term as used in the NMMWA. See id.

The New Mexico Court of Appeals more recently followed the same approach in Armijo v. Wal-Mart Stores, Inc., when it looked to the FLSA for the definition of "similarly situated."  Armijo v. Wal-Mart Stores, Inc., 168 P.3d 129, 144 (N.M.App. 2007).  In that collective action, which also was brought pursuant to the New Mexico Minimum Wage Act, plaintiffs sought certification of a class of hourly employees who alleged that they had been made to work through meals and breaks—and otherwise "off the clock"—without compensation. Id. at 133, 134.   On an interlocutory appeal taken from an order granting class certification, the court of appeals, in evaluating the propriety of certification, noted that the NMMWA "permits a collective action by employees on behalf of 'themselves and other employees *similarly situated*.'" Id. at 144 (*quoting* N.M. STAT. ANN. § 50-4-26(B)(2)) (emphasis added).  The court also recognized, however, that the NMMWA "does not define the term 'similarly situated,' and there is no appellate decision in New Mexico regarding the standard." Id.

The FLSA, on the other hand, *does* include a provision, 29 U.S.C. § 216(b), allowing "similarly situated" employees to bring a collective action for violations of its provisions. See Armijo. 168 P.3d at 144; see also 29 U.S.C. § 216(b) (allowing for action to recover under the FLSA "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.").  Consequently, concluded the court, it would turn for guidance to federal cases law construing § 216(b) of the FLSA. Armijo, 168 P.3d at 144.

9

The Arnolds do not deny that there exist situations in which it is appropriate to consider federal law for assistance in construing state statutory terms left undefined, or for which there is no guidance available from the state courts. [See Doc. 16 at 3-4 ("Armijo simply stands [for] the proposition that federal case law *can* be used for *guidance*, and Garcia simply stands for the proposition that it is *appropriate* to look to federal case law, if there is no guidance available from the New Mexico courts.") (emphasis in original)]. They posit, however, that this is not one of those situations, "[b]ecause there is more than ample New Mexico case law defining the term 'accrual' for purposes of determining when New Mexico statutes of limitations begin to run. . . ." [Id. at 4]. In support, the Arnolds cite the following five cases: Zamora v. Prematic Serv. Corp., 936 F.2d 1121 (10th Cir. 1991);  State ex rel. Pub. Employees Ret. Ass'n v. Longacre, 59 P.3d 500 (N.M. 2002); Cummings v. X-Ray Assocs. of New Mexico, P.C., 918 P.2d 1321 (N.M. 1996); Garcia on Behalf of Garcia v. La Farge, 893 P.2d 428 (N.M. 1995); and Saiz v. Belen School Dist., 827 P.2d 102 (N.M. 1992). [Doc. 16 at 2].

Importantly, however, not one of the cases cited by the Arnolds involves claims brought pursuant to the New Mexico Minimum Wage Act. Zamora was an action for breach of an insurance contract. Although the court discussed when a cause of action accrues in a contract case, it did not speak of "discovery" but, instead, held that "[w]here a contract of indemnity contains a promise to make specified payments, an immediate right of action accrues upon the failure of the indemnitor to perform, regardless of whether actual damages have been sustained." Zamora, 936 F.2d at 1123.

10

Longacre involved an attempt by the Public Employees Retirement Association ("PERA") to recover an overpayment of benefits made to one of its members. The sole issue on appeal was the constitutionality of N.M. STAT. ANN. § 10-11-4.2(A), which allows the PERA to recover all error- or omission-caused overpayments made for the one year period preceding the date the error or omission was discovered. Longacre, 59 P.3d at 503. In holding that § 10-11-4.2(A) is a constitutional statute of repose, the court differentiated between statutes of limitations and statutes of repose, noting in passing and as part of its comparison of the two types of statutes that, while a statute of reposes runs from a "statutorily determined triggering event," a statute of limitations begins when the cause of action accrues, with the accrual date "*usually* being the date of discovery." Id. (emphasis added) (internal quotations omitted). That the date of accrual is usually the date of discovery of the cause of action, however, was in no way central to the Longacre court's holding.

Cummings and Garcia on Behalf of Garcia both were actions brought pursuant to New Mexico's Medical Malpractice Act, in which the plaintiffs challenged the constitutionality of the three-year statute of repose, N.M. STAT. ANN. § 41-5-13, set forth therein. In Cummings, a nurse who underwent a pre-employment physical that included a chest X-ray brought a medical malpractice action against the radiology group that performed the procedure, alleging that it had failed to diagnose a cancerous mass in her lung. Cummings, 918 P.2d at 1325. In upholding the constitutionality of § 41-5-13, the court considered the "discovery rule" and the "occurrence rule," the "[t]wo basic standards [that] determine the beginning of the time period in which a patient must file a claim for medical malpractice."

11

Id. at 1334.  As did the Longacre court, the Cummings court distinguished between statutes of limitation and statutes of repose, similarly commenting on the fact that the former "begin[] to run when the cause of action accrues, the accrual date usually being the date of discovery[,]" while the latter "run[] from a statutorily determined triggering event."  Id. at 1335.  As in Longacre, any discussion of the "discovery rule" was not central to the Cummings's court's holding that the plaintiff/nurse's medical-malpractice claim was time-barred.

Similarly, in Garcia on Behalf of Garcia, the court differentiated between statutes of limitation and statutes of repose, explaining their purposes and the triggering event (i.e., discovery or occurrence), that starts the running of each.  See  Garcia on Behalf of Garcia, 893 P.2d at 433.  Although the court in Garcia on Behalf of Garcia concluded that § 41-5-13 neither violated the equal protection rights of medical malpractice claimants nor amounted to prohibited "special legislation," the court also held that § 41-5-13 did violate the substantive due process rights of those whose claims accrued so near the end of the limitations period that those persons had an insufficient amount of time to assert an accrued cause of action.  Id. at 437-438.

The final case relied upon by the Arnolds is Saiz v. Belen School Dist., wherein the personal representative of a 13-year-old boy who was electrocuted after touching an outdoor lighting pole at a high school football game sued the school district pursuant to the New Mexico Tort Claims Act.  The cause of the boy's electrocution was determined to have been a contractor's failure to install a smooth plastic bushing, which was required under the state

electrical code.  Saiz, 827 P.2d at 107.  In the context of holding that the employer of an independent contractor performing work that the employer should, as a matter of law, realize creates a peculiar risk of physical harm to others has a nondelegable duty to take reasonable precautions to guard against that harm, the court "briefly consider[ed]" whether the personal representative's action against the school district was time-barred, since a direct action against the contractor would have been untimely under the applicable statute of repose, N.M. STAT. ANN. § 37-1-27.  Id. at 110, 116.  The court concluded that the representative's action was not time-barred and, in a footnote, noted that, while a statute of limitations begins to run when a cause of action is discovered, a statute of repose "begins to run from a specific date unrelated to the date of injury and thus may abrogate a cause of action before it accrues." Id. at 116 n.12.

From these five cases, none of which involved claims of violations of the New Mexico Minimum Wage Act, the Arnolds ask the Court to extract and in this matter apply the rule that a statute of limitations begins to run when a cause of action accrues, with the date of accrual being the date of discovery of the cause of action.  Having considered and thoroughly evaluated each of these cases, however, the Court is not persuaded that they lend weight to the Arnolds' argument that the "discovery rule" applies under the facts as they exist here.  Again, while the Arnolds seek to recover for damages allegedly sustained as a result of Schlumberger's failure to compensate for overtime hours worked by Mr. Arnold, not one of their relied-upon cases was brought pursuant to the NMMWA.  Additionally, to the extent the courts in those cases discussed the "discovery rule," they did so in the context

of comparing that rule to the "occurrence rule" that applies to statutes of repose. Those discussions, which did not appear key to the courts' holdings, appear to have occurred in dicta.

It is for these reasons that the Court declines the Arnolds' invitation to apply the "discovery rule" in the instant matter and, instead, will look for guidance to federal cases construing the term "accrue," as that term is used in the Federal Labor Standards Act, a practice approved by the state courts of New Mexico. See Garcia, 689 P.2d at 937; Armijo, 168 P.3d at 144.

Federal courts to have considered the issue of accrual under the FLSA have consistently and uniformly held that "[a] cause of action is deemed to accrue, as a general rule, at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." Hughes v. Region VII Area Agency on Aging, 542 F.3d 169, 187 (6th Cir. 2008) (internal quotations omitted); see also Brown v. United States, 2005 WL 6124306, at *6 (Fed. Cl. June 6, 2005); Singer v. City of Waco, Tex., 324 F.3d 813, 828 (5th Cir. 2003); Knight v. Columbus, Ga., 19 F.3d 579, 581 (11th Cir. 1994); Mitchell v. C & S Wholesale Grocers, Inc., 2010 WL 2735655, at *2 (D.N.J. July 8, 2010); Escobedo v. Dynasty Insulation, Inc., 694 F.Supp.2d 638, 651-652 (W.D.Tex. 2010); Dixon v. City of Forks, 2009 WL 1608506, at *1 (W.D.Wash. June 9, 2009). Decisions from within this district have not been to the contrary. See, e.g., Mistretta v. Sandia Corp., 1977 WL 17, at *13 (D.N.M. Oct. 20, 1977) ("A separate cause of action for overtime compensation accrues at each regular payday immediately

14

following the work period during which the services were rendered and for which overtime compensation is claimed.").

In this case, the Arnolds do not deny that Schlumberger's last payment of overtime wages to Mr. Arnold occurred some time in mid-May, 2008. [See Doc. 5 at 2 ("Schlumberger's last payment of overtime wages to Arnold was in mid-May 2008. . . ."); Doc. 7 at 1 ("The factual allegations set forth in the motion to dismiss are admitted. . . .). Thus, applying the FLSA interpretation of "accrue," the latest that the Arnolds' cause of action can be deemed to have accrued is mid-May, 2008.  Pursuant to § 37-1-5 of the New Mexico Minimum Wage Act, the Arnolds were required to assert their claims within one year, or not later than mid-May, 2009.  See N.M. STAT. ANN. § 37-1-5.  The Arnolds did not file their *Complaint* against Schlumberger until February 25, 2010, which would appear to mean that they cannot state a plausible claim for relief because the right or rights upon which they seek to sue have been extinguished.  See Solomon, 2010 WL 3069699, at *2.

However, given Mr. Arnold's representations (as set forth in an affidavit attached to the Arnolds' response to Schlumberger's motion to dismiss) that he had been advised that Schlumberger was legally entitled to follow the "fluctuating workweek" method of calculating overtime,[4] this Court ordered simultaneous supplemental briefing on the issue of

---

[4]  In his affidavit, Mr. Arnold states that "[a]t the time [he] began [his] employment [he] was advised by [Schlumberger's] management that [Schlumberger] paid overtime on a declining scale . . . and that it was legal in New Mexico for [Schlumberger] to do so." [Doc. 7; Exh. A at 1].

Mr. Arnold further maintains that "[o]n several occasions over the years the issue was discussed between co-workers and [Schlumberger's] management, and [he] was always advised

the applicability of the doctrine of equitable estoppel to the facts of this case. [See Docs. 22, 23, 24]. The Court's concern was whether Schlumberger should be estopped from invoking the statute of limitations to bar a claim that accrued in mid-May, 2008, when it was not until September, 2009 that Schlumberger, via letter sent by its personnel manager, Peter Brownell, informed Mr. Arnold of its decision to retreat from the "fluctuating workweek" method of calculating overtime. [See Doc. 7; Exh. A, att. 1].

The doctrine of equitable estoppel is a limited one that aims at preventing one party from benefitting from its deception or misleading conduct. Indeed, "[t]he notion of preventing deceit and deceitful conduct is the basis for New Mexico's formulation of the equitable estoppel doctrine." Mannick v. Wakeland, 117 P.3d 919, 927 (N.M.App. 2004). Equitable estoppel

> is the principle by which a party who knows or should know the truth is absolutely precluded, both at law and in equity, from denying, or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another, who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon them thereby, as a consequence reasonably to be anticipated, changing his position in such a way that he would suffer injury if such denial or contrary assertion was allowed.

28 Am. Jur. 2d *Estoppel and Waiver* § 28 (1964).

To prevail on a claim of equitable estoppel, the Arnolds must prove that Schlumberger

---

that [Schlumberger] had the legal right to pay overtime on a declining scale." [Doc. 7; Exh. A at 1].

(1) concealed material facts, falsely represented material facts, or made representations of fact different or inconsistent with later assertions in court; (2) intended or expected that the Arnolds would act upon this conduct; and (3) possessed either actual or constructive knowledge of the real facts.  The Arnolds must also prove that they (1) lacked both the knowledge and the means of acquiring knowledge of the truth as to the facts in question; (2) relied on Schlumberger's conduct; and (3) acted upon that conduct in a way that prejudicially altered their position.  See Village of Angel Fire v. Board of County Comm'rs of Colfax County, --- P.3d ----, 2010 WL 2143657, at *6 (N.M.App. Mar. 25, 2010).

As is relevant to the facts of this case, the New Mexico Court of Appeals in 2006 issued an opinion in which it held that "calculating overtime based on a fluctuating workweek, pursuant to which an employee earns diminishing hourly overtime wages as the number of overtime hours increases, is inconsistent with Section 50-4-22[(D)]"[5] of the New Mexico Minimum Wage Act.  N.M. Dept. of Labor v. Echostar Commc'n Corp., 134 P.3d

---

[5]  Section 50-4-22(d) of the New Mexico Minimum Wage Act provides that

> [a]n employee shall not be required to work more than forty hours in any week of seven days, unless the employee is paid one and one-half times the employee's regular hourly rate of pay for all hours worked in excess of forty hours.  For an employee who is paid a fixed salary for fluctuating hours and who is employed by an employer a majority of whose business in New Mexico consists of providing investigative services to the federal government, the hourly rate may be calculated in accordance with the provisions of the federal Fair Labor Standards Act of 1938 and the regulations pursuant to that act; provided that in no case shall the hourly rate be less than the federal minimum wage.

N.M. STAT. ANN. § 50-4-22(D) (1978).

780, 784-785 (N.M.App. 2006).  The court's conclusion not only promotes the NMMWA's remedial purposes of (1) protecting workers; and (2) ensuring that employers bear the financial burden of requiring employees to work additional hours, but also is bolstered by a 1999 amendment to the statutory language pursuant to which only a limited category of employers may calculate overtime pay for employees working fluctuating hours "in accordance with the provisions of the federal Fair Labor Standards Act and the regulations pursuant to that act. . . ."  Id. at 782-783 (quoting N.M. STAT. ANN. § 50-4-22(D) (1978)). The pertinent federal regulation contemplates that "[a]n employee employed on a salary basis may have hours of work which fluctuate from week to week. . . ."  29 C.F.R. § 778.114(a). So long as there is "a clear mutual understanding of the parties[,]" such an employee and his or her employer may agree that the employee's fixed salary is compensation for the hours worked each week, whatever their number, as long as the salary compensates the employee "at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest. . . ."  Id.  In such a situation, it is permissible to compensate the employee for overtime hours at a rate of one-half the employee's hourly rate.  "Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement."  Id.  It was an employee-employer contract providing for payment pursuant to the above-described fluctuating workweek method that the Echostar court determined to be violative of the public policy set forth in the NMMWA.  Echostar Commc'n Corp., 134 P.3d at 783.

Assuming without deciding that the <u>Echostar</u> decision was what caused Schlumberger to reevaluate its use of the fluctuating workweek method of calculating overtime pay, to prevail on an equitable-estoppel theory, the Arnolds have not demonstrated that <u>Echostar</u>, a decision that was published two years before the Arnolds' cause of action accrued, was unavailable to them, or that Schlumberger somehow concealed its existence.

A similar situation arose in <u>Perryman v. Motorist Mut. Ins. Co.</u>, where the Indiana Court of Appeals rejected the plaintiff/insured's argument that the defendant/insurer should be estopped from asserting the statute of limitations as a bar to the plaintiff's claim for coverage for the cleanup of leaked pollutants.    <u>Perryman v. Motorist Mut. Ins. Co.</u>, 846 N.E.2d 683, 690-191 (Ind.App. 2006).  The plaintiff in <u>Perryman</u> was notified in March 1994 that his claim was denied.  In the first few months of 2004, he was advised that, due to a 1996 change in the law, his claim might now be covered.  In December 2004, the plaintiff brought suit against the defendant/insurer.  The trial court entered summary judgment on the ground that the claim was time-barred under the applicable 10-year statute of limitations. <u>Id.</u> at 690.

The Court of Appeals agreed with the trial court's conclusion that the doctrine of equitable estoppel did not toll the statute of limitations, rejecting the plaintiff's argument that the defendant/insurer fraudulently concealed the 1996 change in the law from him. <u>Perryman</u>, 846 N.E.2d at 690.  As the court explained, when the defendant/insurer denied the plaintiff's claim in 1994, it did so in good faith and on the basis of the state of the law as it existed prior to the change in 1996.    <u>Id.</u>    Contrary to the plaintiff's assertion, the

defendant/insurer was under no duty to advise him of the Indiana Supreme Court decision that changed the law, as that decision was published and was "a matter of public record, equally accessible to [the plaintiff]." Id. at 691.  To estop the defendant/insurer under these circumstances, reasoned the court, would not just create and impose upon insurance companies a burden that the court was unwilling to fashion, it would "also reward plaintiffs who fail to diligently research [the] law within the statute of limitations term in order to timely bring a claim." Id.

The Arnolds' case is similar to the extent that they claim to have learned from Peter Brownell's September 2009 letter that Schlumberger should not have been compensating its New Mexico employees under the fluctuating workweek method of calculating overtime. Again, assuming without deciding that Schlumberger's reevaluation of its method of overtime compensation resulted from the change of law signaled in Echostar, the Arnolds have not demonstrated that Schlumberger concealed this published opinion, or that the Arnolds lacked knowledge and the means of acquiring knowledge of the existence of Echostar. See Village of Angel Fire, 2010 WL 2143657, at *6.  Rather, Echostar, which was issued two years before Mr. Arnold left Schlumberger, was as available and accessible to the Arnolds as it was to Schlumberger.

Additionally, it is not entirely clear what Schlumberger told Mr. Arnold about the fluctuating workweek method of overtime compensation, or when any such alleged statements were made.  In his affidavit, Mr. Arnold states that "[a]t the time [he] began [his] employment, [he] was advised by [Schlumberger's] management that [Schlumberger] paid

20

overtime on a declining manner . . . and that it was legal in New Mexico for [Schlumberger] to do so." [Doc. 7; Exh. A at 1].  According to the *Complaint*, however, Mr. Arnold began employment with Schlumberger in January 2000, which was six years before the New Mexico Court of Appeals in <u>Echostar</u> determined that the fluctuating workweek method of computing overtime compensation violates the public policy set forth in the NMMWA.  <u>See Echostar Commc'n Corp.</u>, 134 P.3d at 783.  Schlumberger's alleged statement to Mr. Arnold at the time he began his employment, then, would appear to be an accurate statement of the law as it existed at that pre-<u>Echostar</u> time, and not any sort of false representation.

Mr. Arnold also states that "on several occasions over the years . . . the overtime issue was discussed between his co-workers and [Schlumberger's] management, and he was always advised that [Schlumberger] had the legal right to pay overtime on a declining scale." [Doc. 24 at 2-3].  But this statement is most vague.  For one thing, it is difficult if not impossible to glean from this statement an intent or expectation on Schlumberger's part that Mr. Arnold take some sort of action in reliance on whatever may have been conveyed, since Mr. Arnold apparently was not even a party to the conversation but, instead, was "advised" of Schlumberger's right to employ the fluctuation workweek method.  Additionally, it is not clear when this statement allegedly was made.  If "over the years" means between January 2000 and the publication of <u>Echostar</u> in 2006, then the statement was actually accurate.  Moreover, because overtime compensation pursuant to the fluctuating workweek method remains lawful under the FLSA in certain circumstances, any statement that Schlumberger "had the legal right to pay overtime on a declining scale . . ." is not in and of itself false or

wrong.  In short, '[e]stoppel exists as a defense for innocent persons misled to their prejudice by fault or dereliction.  The doctrine has no application where the 'innocent' party was misled through his own want of reasonable care and circumspection.  It has no application where both parties are 'innocent.'"  <u>Gray v. Am. Exp. Co.</u>, 239 S.E.2d 621, 623-624 (N.C.App. 1977).  Such would seem to be the situation here.

Thus, at the time the Court *sua sponte* directed the parties to brief the issue of the applicability of the doctrine of equitable estoppel, the Court was concerned that Schlumberger had possibly made representations such that it would be unfair to allow Schlumberger now to invoke the statute of limitations.  However, the supplemental briefing produced by the parties has not borne that out and, for the reasons stated more fully above, the Court concludes that the doctrine of equitable estoppel has no applicability under the circumstances presented.  Accordingly, this Court agrees with Schlumberger that this time-barred action must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. [<u>See</u> Doc. 4].

## III. CONCLUSION

For the reasons stated more fully herein, the Court concludes that the claims asserted by Andrew and Deborah Arnold in their *Complaint for Violation of the New Mexico Minimum Wage Act* are time-barred.  As a result, the Arnolds fail to state a claim upon which relief may be granted.  Accordingly, the Court will grant *Defendant's Motion to Dismiss*. [Doc. 4].

**IT IS, THEREFORE, ORDERED** that *Defendant's Motion to Dismiss* [Doc. 4] is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter be and hereby is **DISMISSED WITH PREJUDICE**.

**SO ORDERED** this 29th day of October, 2010, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge

23